STEARNS, Respondent, *vs.* McCULLOUGH, Appellant.

1. In an action for a breach of warranty of soundness of a slave, the measure of damages is the difference between the value of the slave, if sound, and the value with the disease or unsoundness, *at the time of sale*. It is error to assume that the slave was not worth any thing at the time of the sale, because he afterwards died of the disease.

*Appeal from St. Clair Circuit Court.*

The opinion of the court contains a sufficient statement of facts. On the trial, the following instructions were given on behalf of the plaintiff :

1. "If the jury believe from the evidence, that said slave was sick, at the time of the sale to said plaintiff, and that she never fully recovered from it, and in consequence of that sickness, or other complaints or disease produced by it, or other secret diseases at the time of sale, died, they must find a verdict for the plaintiff, provided it was not produced by the neglect of said plaintiff."

2. "If the jury believe from the evidence, that said slave, Frances, was unsound at the time of the sale to said plaintiff, and in consequence of such unsoundness, died, the jury must find a verdict for the plaintiff, and assess his damages at an amount equal to the value of the slave if she had been sound."

The following instructions were given on behalf of the defendant:

1. In order to entitle the plaintiff to recover any amount against defendant, it devolved on him to establish that the negro was unsound at the time of the sale and warranty.

2. Unless the jury believe from the evidence, that the girl was unsound at the time of the sale and warranty, they will find for the defendant.

3. If the jury believe from the evidence, that the slave, Frances, was laboring under temporary sickness, which was capable of being speedily cured, and not sickness of a permanent nature, at the time of the sale and warranty, such temporary sickness known to the plaintiff would not, of itself, constitute unsoundness, within the meaning of the warranty.

4. If the jury should believe from the evidence, that the negro girl was actually unsound, at the time of the sale and warranty, the criterion of damages will be the difference between the value of the negro, if sound, and the value with such defect, at the time of the warranty.

The defendant also asked the following instructions, which were refused:

"This being an action upon the warranty, plaintiff is not entitled to recover any thing for the keeping or medical attend-

ance on the negro, unless he offered to return her, even if the jury should find that the negro was unsound.

"Though the negro girl may, at the time of the sale and warranty, have been laboring under a temporary attack of bilious fever, known to the plaintiff at the time, and such sickness might have been speedily cured and was not of a permanent nature, such circumstance would not, of itself, constitute unsoundness, within the meaning of the warranty."

*F. P. Wright,* for appellant. 1. Plaintiff was not entitled to recover for keeping and doctoring the slave, without tendering a return, or at least notifying the defendant of her sickness. 2 Phillips' Ev. 79. Chitty on Contracts, 466. 1 Tucker's Commentaries, 364. 1 Taunt. 566. 2. The court misdirected the jury as to the measure of damages. The slave was not returned. In such cases, the measure of damages is the difference between the real value at the time of sale and the price given. 2 Phillips' Ev. 105. 2 J. B. Moore, 106. Chitty on Contracts, 466. *Caswell* v. *Coare,* 1 Taunt. 566. 3 Starkie's Ev. 1666. 2 ib. 646. *Curtis* v. *Hannay,* 3 Esp. 83. There is no legal distinction between the case where death occurs after the warranty, and where it does not, as the court seems to have supposed, from the apparent conflict in the instructions. The rule of damages is the same in both cases. *Hopkins* v. *Appleby,* 1 Starkie's Rep. 477. 3. The first instruction given for plaintiff is clearly wrong as to what constitutes unsoundness. Temporary sickness at the time of sale, which was known to the plaintiff, did not constitute unsoundness. Even a warranty will not cover defects which are plainly visible to the senses. 2 Kent, 483. *Schuyler* v. *Russ,* 2 Caines, 202. 10 Vesey, 507.

*Ballou,* for respondent. 1. The first instruction on the part of the plaintiff below is correct. *Elton* v. *Brogden,* 4 Camp. Rep. 281. *Lewis* v. *Peake,* 7 Taunt. 153. 8 Mo. Rep. 710. 2. The second instruction is correct. The measure of damages on an express warranty is the difference between the value of the property, if sound, and its value un-

sound.   8 Mo. Rep. 710.   4 Mo. Rep. 16.   *Curtis* v. *Han-
nay*, 3 Esp. 87.   *Bridge* v. *Wain*, 1 Stark. 487.   1 Stark.
153.   2 Greenleaf, § 262.   4 Phill. Ev. 105, and see note, p.
96.   On implied warranties, the price paid is the limit as to
value, instead of the actual value, if sound.   7 Mo. Rep. 512.
Sedgwick on Measure of Damages, 289.   The evidence was,
that the slave would not have been worth any thing, if she had
the disease of which she died, at the time of the sale.   3. The
second instruction refused was embraced in the third given.   4.
The amount claimed for keeping and medical attendance was
remitted, and therefore is no ground for reversing the judgment.
5. The verdict will not be disturbed, if the instructions on
both sides present together a fair exposition of the law of the
case.   15 Mo. Rep. 598.   Ib. 178, 349.   8 Mo. Rep. 342.
6. The Supreme Court will not reverse for a refusal to grant
a new trial, or because the verdict was against the weight of
evidence.   15 Mo. 191.

GAMBLE, Judge, delivered the opinion of the court.

In October, 1851, McCullough sold a negro girl to Stearns
for $500, with a warranty of soundness.   Soon after the sale
she was known to be unwell, and in May following died.   The
present action is upon the warranty of the soundness of the
slave, charging that the slave, at the time of the sale, was dis-
eased, and afterwards died of that disease, and claiming,
also, for the labor, trouble and expense of keeping the slave.
There was no offer to return the slave, and after verdict the
plaintiff remitted the amount which, in his petition, he had
claimed for keeping the slave.   The answer of the defendant
admits the sale and warranty, and the death of the slave, but
denies her unsoundness at the time of the sale.

1. At the trial, there was evidence given by both parties on
the question whether the slave was unsound at the time of the
sale, or had then any disease which produced her death.   The
instructions given by the court placed the question of unsound-

Stearns *v.* McCullough.

ness, at the time of the sale, before the jury in a light as favorable to the defendant as the law would justify; but on the measure of damages, two instructions were given which were in conflict with each other, and that given at the instance of the plaintiff was erroneous. The jury were told in the second instruction given for the plaintiff, that if the slave was unsound at the time of the sale to plaintiff, and in consequence of said unsoundness died, they must find a verdict for the plaintiff and assess his damages at an amount equal to the value of the slave, if she had been sound. Assuming that the court took the price paid to be the value of the slave, if sound, this instruction would authorize a purchaser who had held and used a slave for a long time, to recover back the entire purchase money, if the slave ultimately died of any disease existing at the time of the sale, without any consideration of the value of the services rendered by the slave. The language of the instruction is imperative, that the purchaser was entitled to recover the value of the slave, if disease existed at the time of sale, and that disease subsequently produced death. The evidence in the case showed that the slave, for several months after the sale, was engaged attending to the ordinary duties of a domestic servant.

The instruction given for the defendant on the measure of damages, states the rule properly. They were told in that instruction that if the negro girl was unsound at the time of the sale, the measure of damages was the difference between the value of the slave, if sound, and her value with the disease or unsoundness.

The judgment is, with the concurrence of the other judges, reversed, and the cause is remanded for further proceedings.